# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAREEN JABBAR STANSBURY, SR., | 1:09-cv-00485-OWW DLB (HC) |
| Petitioner, | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| RIOS, JR., Warden, | [Doc. 12] |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## BACKGROUND

Petitioner filed the instant petition for writ of habeas corpus on March 16, 2009. (Court Doc. 1.) Petitioner filed an amended petition on July 17, 2009. (Court Doc. 12.)

In the amended petition, Petitioner challenges a rules violation report he received for violating Code 208-blocking any locking device, Code 224A-attempted assault of any person, and Code 307-refusing to obey an order. Petitioner contends he was denied the opportunity to present evidence or witnesses at his hearings, and he was denied a staff representative of his choice and the representative he received did not provide him assistance. (Amended Petition, at 2-3.)

Respondent filed an answer to the petition on January 15, 2010, and Petitioner filed a traverse on February 10, 2010. (Court Docs. 21, 22.)

1

DISCUSSION

I.   Subject Matter Jurisdiction and Venue

Writ of habeas corpus relief extends to a person in custody under the authority of the United States.  See 28 U.S.C. § 2241. Writ of habeas corpus relief is available if a federal prisoner can show he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).  Whether the Court has subject matter to hear Petitioner's claims pursuant to 28 U.S.C. § 2241 will be discussed below. Although Petitioner is currently in custody at the Federal Correctional Institution Victorville, in Adelanto, California, at the time the instant petition was filed he was incarcerated at the United States Penitentiary (USP) in Atwater, California. Hernandez v. Campbell, 204 F.3d 861, 864 (9th Cir.2000). "'[J]urisdiction attaches on the initial filing for habeas corpus relief, and it is not destroyed by a transfer of the petition and the accompanying custodial change.'" Francis v. Rison, 894 F.2d 353, 354 (9th Cir. 1990), quoting Santillanes v. United States Parole Comm'n, 754 F.2d 887, 888 (10th Cir. 1985); accord Smith v. Campbell, 450 F.2d 829, 834 (9th Cir. 1971).  Therefore, H.A. Rios, Jr., Warden of USP Atwater remains the proper respondent.

II.   Exhaustion of Administrative Remedies

Before filing a petition for writ of habeas corpus, a federal prisoner challenging any circumstance of imprisonment must first exhaust all administrative remedies. Martinez v. Roberts, 804 F.2d 570, 571 (9th Cir. 1986); Chua Han Mow v. United States, 730 F.2d 1308, 1313 (9th Cir. 1984); Ruviwat v. Smith, 701 F.2d 844, 845 (9th Cir. 1983).  The requirement that federal prisoners exhaust administrative remedies before filing a habeas corpus petition was judicially created; it is not a statutory requirement. Brown v. Rison, 895 F.2d 533, 535 (9th Cir. 1990).  Thus, "because exhaustion is not required by statute, it is not jurisdictional." Id.  If Petitioner has not properly exhausted his claims, the district court, in its discretion, may either "excuse the faulty exhaustion and reach the merits or require the petitioner to exhaust his administrative remedies before proceeding in court."

If the petitioner did not properly exhaust his administrative remedies, and such remedies are no longer available, he may have procedurally defaulted on his claims.  See Francis v. Rison,

894 F.2d 353, 354-55 (9th Cir.1990) (applying procedural default rules to administrative appeals); see generally Murray v. Carrier, 477 U.S. 478, 485 (1986); Wainwright v. Sykes, 433 U.S. 72, 86-87 (1977); Tacho v. Martinez, 862 F.2d 1376, 1378 (9th Cir.1988).  If a claim is procedurally defaulted, the court may require the petitioner to demonstrate cause for the procedural default and actual prejudice from the alleged constitutional violation.  See Francis, 894 F.2d at 355 (suggesting that the cause and prejudice test is the appropriate test); Murray, 477 U.S. at 492 (cause and prejudice test applied to procedural defaults on appeal); Hughes v. Idaho State Bd. of Corr., 800 F.2d 905, 906-08 (9th Cir.1986) (cause and prejudice test applied to pro se litigants).

The Bureau of Prisons has established an administrative remedy procedure governing prisoner complaints. The procedure is set forth at 28 C.F.R. § 542.10 et. seq.  First, an inmate must attempt to resolve the issue informally by presenting it to staff before submitting a Request for Administrative Remedy.  28 C.F.R. § 542.13 (1999).  If dissatisfied with the response, the prisoner may proceed with the formal filing of an Administrative Remedy Request.  28 C.F.R. § 542.14 (1999).  Upon denial by the institution, the prisoner may appeal the decision by filing a complaint with the Regional Director of the Bureau of Prisons.  28 C.F.R. § 542.15 (1999).  The Regional Director's decision may be appealed to the General Counsel in Washington, D.C.  Id.  Appeal to the General Counsel is the final step in the administrative remedy process.  Id.

Respondent submits that Petitioner has exhausted all available administrative remedies, and his requested relief was denied at each of level of review.  (Answer, at 3, 6.)

IV.     Applicable Law

Prisoners cannot be entirely deprived of their constitutional rights, but their rights may be diminished by the needs and objectives of the institutional environment. Wolff v. McDonnell, 418 U.S. 539, 555 (1974).  Prison disciplinary proceedings are not part of a criminal prosecution, so a prisoner is not afforded the full panoply of rights in such proceedings.  Id. at 556.  Thus, a prisoner's due process rights are moderated by the "legitimate institutional needs" of a prison. Bostic v. Carlson, 884 F.2d 1267, 1269 (9th Cir. 1989), *citing* Superintendent, etc. v. Hill, 472 U.S. 445, 454-455 (1984).

However, when a prison disciplinary proceeding may result in the loss of good time credits, due process requires that the prisoner receive: (1) advance written notice of at least 24 hours of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action. Hill, 472 U.S. at 454; Wolff, 418 U.S. at 563-567. In addition, due process requires that the decision be supported by "some evidence." Hill, 472 U.S. at 455, *citing* United States ex rel. Vatauer v. Commissioner of Immigration, 273 U.S. 103, 106 (1927). The "some evidence" standard is "minimally stringent," and a decision must be upheld if there is any reliable evidence in the record that could support the conclusion reached by the fact finder. Hill, 472 U.S. at 455-456; see also Barnsworth v. Gunderson, 179 F.3d 771, 779 (9th Cir. 1990); Zimmerlee v. Keeney, 831 F.2d 183, 186 (9th Cir. 1987). Determining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or the weighing of evidence. Hill, 472 U.S. at 455; Toussaint v. McCarthy, 801 F.2d 1080, 1105 (9th Cir. 1986).

V.   Analysis of Petition

    A.   Opportunity to Present Evidence and Witnesses at the UDC and DHO Hearings

On July 15, 2008, Correctional Officer (CO) Jess Pino, was distributing food trays in the D range of the Special Housing Unit (SHU) at USP Atwater. When he opened the food slot for cell 202-where Petitioner was housed, Petitioner reached out through the slot and prevented the trap door from being closed and secured. When Pino attempted to secure the food slot trap door, Petitioner attempted to grab him, and additional staff were required to assist Pino in closing and securing the food trap door. Answer, Exhibit 2, Incident Report #1755349.

The next day, Petitioner was issued an Incident Report charging him with violations of disciplinary codes 208-blocking any locking device, 224A-attempted assault of any person, and 307-refusing to obey and order. Lieutenant Tim Miller was assigned to investigate the report. After being advised of his right to remain silent, Petitioner denied the charges and was provided a copy of the report on July 16, 2008. See Id.

4

Code 208 prohibits "[p]ossession of any unauthorized locking device, or lock pick, or tampering with or blocking any lock device (includes keys), or destroying, altering, interfering with, improperly using, or damaging any security device, mechanism, or procedure." 28 C.F.R. § 541.13. Code 224A prohibits assaulting any person, and Code 203 prohibits threatening another with bodily harm or any other offense. Id.

Petitioner appeared before the Unit Discipline Committee (UDC) on July 18, 2008. At the hearing, Petitioner stated "[t]hey need to look at the surveillance tape. The officers assaulted me. They used government equipment to conduct criminal activity. They yanked my arm. I did not see medical for 17 hours[.]" See Exhibit 2, Incident Report #1755349.

On that same day, the UDC referred the incident report to the Discipline Hearing Officer (DHO) for disposition. See Id. Petitioner was advised of his rights by Case Manager-Chris Liwag. Petitioner refused to sign the acknowledgment of such rights so Liwag signed the acknowledgment indicating that Petitioner was advised of his rights. Exhibit 3, Inmate Rights at Discipline Hearing. Petitioner requested Captain Bill Lothrop as his staff representative for the DHO hearing, and stated he did not request any witnesses. However, Petitioner again refused to sign the request form. Liwag noted Petitioner's requests, and signed the acknowledgment indicating that Petitioner refused to sign. Exhibit 4, Notice of Discipline Hearing Before the DHO. Captain Lothrop signed a "Duties of Staff Representative" notice, and agreed to be the staff representative. Exhibit 5, Duties of Staff Representative.

On July 22, 2008, Petitioner appeared before the DHO-Ms. Deborah Lorance. Petitioner was re-advised of his rights and did not have any documentary evidence or request any witnesses. Petitioner also did not request to see the surveillance videotape or request the DHO to review the videotape. Exhibit 6, Discipline Hearing Officer Report.

The DHO acknowledged that Petitioner had requested Captain Lothrop as a staff representative, but informed Petitioner that Captain Lothrop indicated he had nothing to say because Petitioner held the food trap. Petitioner was advised that members of executive staff are not generally called as staff representatives. Petitioner was then advised of his option to postpone the hearing to obtain another staff representative, but he did not do so. Id.

5

In this case, all of the procedural requirements afforded under Wolff were provided to Petitioner. More specifically, he received advanced written notice of the incident, and the hearing was held before the UDC within 3 days thereafter. Exhibit 2, Incident Report #1755349. Petitioner acknowledges that he was present at the hearing, and although Petitioner contends that he was not allowed to present evidence, the record does not support his claim. Petitioner made a statement to the UDC, and there is no evidence that he provided, or even attempted to provide any documentary evidence beyond merely suggesting that the UDC review the videotape. Moreover, there was no adverse action by the UDC as it merely forwarded the incident report to the DHO.

With regard to the DHO hearing, Petitioner was again afforded all of the procedural requirements under Wolff. As previously stated, Petitioner initially received notice of the charges on July 16, 2008, and again on July 18, 2008. He declined to present any witnesses, and there is no evidence to support his claim that he requested the reporting officer appear as a witness. Petitioner denied holding the trap door open or grabbing the officers arm. In addition, Petitioner did not request to see the surveillance videotape, nor did he request the DHO to review the videotape. Exhibit 6, Discipline Hearing Officer Report. Moreover, Petitioner was provided an impartial DHO, as Lorance had no involvement in the incident. Exhibit 2, Incident Report §1755349. Although Petitioner initially requested Captain Lothrop as a staff representative and he agreed, he later declined stating he had nothing to say as Petitioner held the food trap. Petitioner was advised that he could postpone the hearing to obtain another staff representative but declined to do so. Based on the greater weight of the evidence, Petitioner was found guilty of the charged violations and imposed a total of fifty-four days disallowance of good conduct time and loss of communication privilege for 180 days.

Contrary to Petitioner's claim, there is no support that he requested the videotape of the incident be reviewed. Although he suggested the UDC do so, there was no request made to the DHO-who has the actual authority to sanction Petitioner. In any event, the DHO did not rely on the videotape in rendering her decision. Rather, the DHO's finding of guilt was based on statement from the reporting officer that he observed Petitioner place his arm in the trap to

prevent it from being closed and refused to remove it.  Some evidence supports the DHO's findings based on the factual statements in the incident report by the reporting officer.  Hill, 472 U.S. at 455.

### B. Request for Staff Representative of Choice

Petitioner contends that he was denied the right to a staff representative of his choice and the staff representative present at the hearings did not protect his rights.

Contrary to Petitioner's claim, there is no general constitutional right to have a staff representative appear on his behalf in a disciplinary proceeding.  See Hudson v. Hedgepeth, 92 F.3d 748, 751 (8th Cir. 1996).   Due process requires inmates be provided with the assistance of a staff representative if the inmate is illiterate or "the complexity of the issues makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case.  See Wolff, 418 U.S. at 570.  In this instance, there is no evidence that Petitioner is illiterate, nor are the issues of whether he interfered with locking a food slot, attempted to assault an officer and refused to obey an order, legally or factually complex.  At the hearing, Petitioner acknowledged that he understood the charges against him and he was able to voice his denial of the charges.  See Exhibit 6, Discipline Hearing Officer Report. In addition, he clearly articulated his claims at the administrative appeal level and to this Court, which belies his claim that a staff representative was required.

In the disciplinary context, Petitioner is only entitled to the process provided under Wolff. Walker v. Sumner, 14 F.3d 1415, 1420 (9th Cir. 1994).  As explained above, Petitioner was provided all the procedural protections set forth in Wolff, and there is no basis for relief. Although Petitioner contends that he requested Counselor Daniel as a staff representative, there is no evidence that such request was made during the disciplinary proceedings.  The only reference to the claim that he was denied the opportunity to have Counselor Daniel as a staff representative was not made until his administrative appeal to the BOP Central Office.  See Exhibit 8, Central Office Administrative Remedy Appeal.  *For the first time in his traverse*, Petitioner attaches a letter he claims to have authored to the UDC, dated July 15, 2008, and signed under penalty of perjury on July 17, 2008.  Petitioner claims that Lieutenant T. Miller did

7

not advise him of his rights to a staff representative or to present evidence.  However, the next day on July 18, 2008, Petitioner was advised of his procedural rights at the DHO (the only relevant authority that may impose sanctions) by case manager Chris Liwag.  Nor is there any evidence that Petitioner submitted or attempted to submit the letter to DHO.  Thus, even if Petitioner were entitled to a staff representative of his choice-counselor Daniel-there is no credible evidentiary support that his request was timely or that such request was denied.  Further, this Court may not make its own assessment of the credibility of witnesses or re-weigh the evidence.  Accordingly, Petitioner's claim is without merit.

                                    RECOMMENDATION

   Based on the foregoing, it is HEREBY RECOMMENDED that:

   1.   The instant amended petition for writ of habeas corpus be DENIED; and

   2.   The Clerk of Court be directed to enter judgment in favor of Respondent.

   This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served and filed within fourteen (14) days after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

   IT IS SO ORDERED.

   Dated:   May 2, 2010                    /s/ Dennis L. Beck
                                    UNITED STATES MAGISTRATE JUDGE